# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **ALEXSANDAR CVIJETINOVIC,** | : | **Case No. 04CV2555** |
| | : | |
| **Petitioner,** | : | |
| | : | **JUDGE KATHLEEN M. O'MALLEY** |
| **v.** | : | |
| | : | |
| **MICHELLE EBERLIN, Warden** | : | <u>**ORDER**</u> |
| | : | |
| **Respondent.** | : | |

On December 29, 2004, Petitioner, Alexsandar Cvijetinovic ("Cvijetinovic" or "Petitioner"), filed a petition for a *writ of habeas corpus* (Doc. 1) pursuant to 28 U.S.C. § 2254. On January 11, 2005, the Court referred (Doc. 5) this matter to Magistrate Judge Nancy A. Vecchiarelli, ultimately for preparation of a Report and Recommendation ("R&R") regarding Cvijetinovic's petition.  On March 17, 2005, Respondent, Michelle Eberlin ("Respondent"), filed a Return of Writ (Doc. 7).  On April 15, 2005, Cvijetinovic filed a Traverse (Doc. 14). On April 14, 2006, Magistrate Judge Vecchiarelli issued her R&R (Doc. 16) recommending that this Court deny Cvijetinovic's petition and dismiss this case.  On May 17, 2006, Cvijetinovic filed Objections to that R&R (Doc. 19).  Respondent filed a Response to Cvijetinovic's Objections on May 19, 2006.  Subsequently, both parties have filed supplemental responses identifying supplemental authority in support of their respective positions.  Docs. 21-24.

For the reasons articulated below, the Court **GRANTS** Cvijetinovic's *habeas* petition with respect to Ground One and the aspect of Ground Four that is subsumed within Ground One.  Further, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation with respect to the remaining Grounds and **DISMISSES** these Grounds accordingly.

I.        **BACKGROUND**

The R&R accurately sets forth the undisputed factual and procedural background of this case.  Doc. 16 at pp. 1-5.  In the interest of efficiency, therefore, the Court adopts the R&R's articulation of the factual and procedural background.  To the extent necessary, if any, the Court will elaborate on factual and/or procedural issues worthy of additional consideration. The following is a brief summary of pertinent facts.

This petition arises out of several convictions in the Cuyahoga County Court of Common Pleas in 1999.  Cvijetinovic, eighteen years old at the time, pled guilty to multiple charges related to armed robberies he committed around 1998.  He also pled guilty to an intimidation charge related to threats directed toward his girlfriend in the aftermath of his arrest.  Judge Kathleen A. Sutula sentenced Cvijetinovic to an aggregate prison term of sixteen years, including terms exceeding the statutory minimum based on judicial fact-finding, consecutive terms of imprisonment, and mandatory firearms specifications.[1]

After his conviction, Cvijetinovic filed a series of motions in the state court seeking to withdraw his guilty plea and challenging his sentence.  These efforts are described in the R&R; the following is a basic timeline of pertinent events:

---

[1] The terms of Cvijetinovic's sentence are set forth in greater detail in the R&R. Doc. 16 at 2 (citing Journal Entries at Doc. 11, Exh. 7-9).

<u>Timeline</u>

| | | |
|---|---|---|
| 1. | **1/19/1999** | Guilty Plea; |
| 2. | **2/10/1999** | Sentencing (16 years); |
| 3. | **6/26/2000** | U.S. Supreme Court decides *Apprendi v. New Jersey*, 530 U.S. 466 (2000); |
| 4. | **7/12/2002** | Cvijetinovic files his first direct appeal, which challenges his guilty plea and sentence ("Cvijetinovic I") – motion for leave to file delayed appeal – granted; |
| 5. | **2/6/2003** | Ohio Court of Appeals affirms Cvijetinovic's convictions, but remands for re-sentencing (Cvijetinovic I); |
| 6. | **3/14/2003** | Cvijetinovic files a motion to withdraw guilty plea in the trial court; |
| 7. | **4/15/2003** | Trial court denies the motion to withdraw guilty plea (#6) and re-sentences Cvijetinovic to 16 years in prison; |
| 8. | **8/8/2003** | Cvijetinovic timely files a second direct appeal ("Cvijetinovic II"), now challenging the re-sentencing and denial of his motion to withdraw his guilty plea; |
| 9. | **12/24/2003** | Ohio Court of Appeals affirms re-sentencing (Cvijetinovic II); |
| 10. | **1/5/2004** | Cvijetinovic files an application for reconsideration in the Ohio Court of Appeals (Cvijetinovic II); |
| 11. | **1/14/2004** | Ohio Court of Appeals denies reconsideration (Cvijetinovic II); |
| 12. | **2/23/2004** | Cvijetinovic files an appeal with Ohio Supreme Court (Cvijetinovic II); |
| 13. | **5/26/2004** | Ohio Supreme Court denies jurisdiction for lack of a substantial constitutional question (Cvijetinovic II); |
| 14. | **6/24/2004** | U.S. Supreme Court issues *Blakely v. Washington*, 542 U.S. 296 (2004); |
| 15. | **7/12/2004** | Cvijetinovic files application for delayed reconsideration of Cvijetinovic I (*i.e.*, Ohio Court of Appeals decision affirming conviction and remanding for re-sentencing); |
| 16. | **7/16/2004** | Ohio Court of Appeals denies application for delayed reconsideration of Cvijetinovic I; |
| 17. | **8/13/2004** | Cvijetinovic files an application for writ of certiorari with U.S. Supreme Court regarding Cvijetinovic II; |
| 18. | **9/30/2004** | Cvijetinovic files for reopening of appeal under Rule 26(B) - ineffective appellate counsel[2]; |
| 19. | **10/12/2004** | U.S. Supreme Court denies cert. regarding Cvijetinovic II; |
| 20. | **12/29/2004** | Cvijetinovic files the petition for *writ of habeas corpus* currently before the Court; |

---

[2] In his motion for reopening appeal pursuant to Ohio Appellate Rule 26(B) – "Cvijetinovic III" – Cvijetinovic did not raise any of the grounds in his *habeas* petition now before this Court.  In fact, Cvijetinovic did not raise a claim under *Blakely v. Washington*, 542 U.S. 296 (2004), in any motion or application other than his brief to the United States Supreme Court.

| 21. | **1/31/2005** | Ohio Court of Appeals denies Rule 26(B) application; |
| 22. | **3/8/2005** | Cvijetinovic files appeal to Ohio Supreme Court regarding Rule 26(B) denial; |
| 23. | **4/27/2005** | Ohio Supreme Court dismisses appeal of Rule 26(B) denial; |
| 24. | **2/27/2006** | Ohio Supreme Court issues *State v. Foster*, 109 Ohio St. 3d 1 (2006). |

In evaluating the propriety of his sentence, the Ohio Court of Appeals summarized the applicable state sentencing guidelines and Judge Sutula's findings at the sentencing hearing. Because these provisions of the Ohio sentencing guidelines and Judge Sutula's findings are pertinent to Cvijetinovic's *habeas* claims, the Court of Appeals' analysis is included here:

> In his fourth and seventh assignments of error, the defendant contends that the trial court did not properly consider the statutory sentencing criteria before imposing more than the minimum sentences on the defendant. We disagree.
>
> R.C. 2929.14 provides:
>
> "(A) Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(4), or (G) of this section and except in relation to an offense for which a sentence of death or life imprisonment is to be imposed, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter and is not prohibited by division (G)(1) of section 2929.13 of the Revised Code from imposing a prison term on the offender, the court shall impose a definite prison term that shall be one of the following: " *** (3) states: 'For a felony of the third degree, the prison term shall be one, two, three, four, or five years *** '"
>
> The trial court did not sentence the defendant to the minimum prison term, but instead imposed a four-year term of incarceration on the intimidation charge. Therefore, because the defendant had not served a prior prison term, the trial court was required to make a finding on the record that "the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14 (B). A review of the transcript reveals that the trial court stated, after a thorough recitation of the specific facts in this case:
>
> " *** imposing the minimum sentence to any one of these three files, which happened on three separate occasions, all of which were the subject of your braggadocio, would seriously demean what these victims suffered; five

4

people on three different occasions feared for their very lives. Imposing minimum sentence *** would seriously not adequately protect the community from future crime." (T. 18).

In this case, the trial court complied with R.C. 2929.14 (B) in making the findings required prior to imposing more than the minimum term of incarceration on this defendant. Further, we note that under the sentencing procedures enacted as part of Senate Bill 2, an appellate court cannot reduce, modify or vacate the defendant's sentence unless we find that the trial court's decision is clearly and convincingly unsupported by the record and/or contrary to law. R.C. 2953.08; *State v. Parker* (Jan. 19, 1999), Clermont App. No. CA 98-04-025; *State v. Garcia* (1998), 126 Ohio App.3d 485; *State v. Donnelly* (Dec. 30, 1998) Clermont App. No. CA98-05-034. We cannot say that the trial court's decision in this case is clearly and convincingly unsupported by the record.

The defendant further avers that the trial court failed to comply with R.C. 2929.12 (B) in imposing more than the minimum sentence. We disagree. The defendant essentially contends that the trial court did not set forth reasons in support more than the minimum sentence. However, the Ohio Supreme Court has stated:

"R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." *State v. Edmonson*, 86 Ohio St.3d 324, 1999-Ohio-110, syllabus. Rather, "the trial court merely has to state, somewhere on the record, that one or both of the findings set forth in R.C. 2929.14(B) justify a longer sentence than the minimum." *State v. Bell*, 11th Dist. No. 2001-A-0032, 2002-Ohio-2948, at p. 8. Furthermore, 'A silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12.' *State v. Adams* (1988), 37 Ohio St.3d 295, paragraph three of the syllabus; *accord State v. O'Dell* (1989), 45 Ohio St.3d 140, 147. We therefore overrule these assignments of error.

Doc. 7 at 36-37 (quoting Exh. 35 at 7-9).

Cvijetinovic's *habeas* petition presents the following grounds for relief:

A.     Ground one:  SIXTH AND FOURTEENTH AMENDMENTS

Supporting Facts:   Petitioner was denied his constitutional rights guaranteed by the Sixth and Fourteenth Amendments when petitioner, who was a first offender, was sentenced to more than a minimum sentence

5

based on facts neither alleged in the indictment, found by a jury, nor admitted by petitioner.

B.      Ground two:  FOURTEENTH AMENDMENT

Supporting Facts:  Petitioner was denied due process of law when petitioner timely sought to withdraw his plea of guilty.  The court did not conduct a hearing on the motion to withdraw his plea where petitioner alleged his plea resulted from constitutional violations.

C.      Ground three: SIXTH AND FOURTEENTH AMENDMENTS

Supporting Facts:  Petitioner was denied effective assistance of counsel when he entered pleas based on misrepresentations by counsel, where counsel failed to render effective assistance of counsel.  Petitioner's plea of guilty was also based on misrepresentations made by the court.

D.      Ground four:  SIXTH AND FOURTEENTH AMENDMENTS

Supporting Facts:  Petitioner was denied a fair tribunal where the court relied on matters outside the record in imposing a sentence.  Moreover, the court improperly sentenced petitioner to consecutive terms of imprisonment where the court did not articulate its reasons for such a sentence.  Petitioner, being a first offender was entitled to no more than a minimum sentence.  However, he was sentenced to a term of sixteen (16) years.

Doc. 1 at p. 5.

## II.     <u>LAW AND STANDARD OF REVIEW</u>

Because Cvijetinovic filed his *habeas* petition on December 29,  2004, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's review of the petition.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998); *see also Woodford v. Garceau*, 538 U.S. 202, 210 (2003).[3]  As a procedural matter, the AEDPA requires that *habeas* petitions be filed within one year of the latest of four

---

[3] The AEDPA applies to petitions filed <u>after</u> the Act's <u>April 26, 1996</u> effective date. *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999).

triggering dates.  In this case, there is no dispute regarding the timeliness of Cvijetinovic's petition.

### A.    Procedural Prerequisites to *Habeas* Relief

In addition to the statute of limitations, there are two other prerequisites to *habeas* relief under the AEDPA.  First, state prisoners must ordinarily exhaust all available state court remedies prior to seeking *habeas* relief.  28 U.S.C. § 2254(b), (c); *Rhines v. Weber*, 544 U.S. 269, 274 (2005).  Second, under the doctrine of procedural default, a *habeas* petitioner cannot ordinarily assert claims that were not properly submitted to the state court under its procedural rules and which are now barred by state procedural law.  *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

### 1.    Exhaustion

A petitioner has exhausted his state court remedies when he has fairly presented all of the claims raised in his *habeas* petition to the state courts.  *Rhines*, 544 U.S. at 274.  The petitioner bears the burden of proving exhaustion.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  The exhaustion requirement is satisfied if the petitioner presents the factual and legal basis of all his claims to the highest state court, thus giving the state an opportunity to adjudicate the claims before the petitioner seeks *habeas* relief in federal court.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  By fairly presenting his claims to the state's high court, the petitioner gives each rung in the state judicial ladder a chance to address the claims and exhausts the state's established procedures.  *Id*.

*Habeas* relief is only appropriate for violations of federal constitutional rights.  28 U.S.C. § 2254(d).  Claims asserted as general allegations related to a federal constitutional

7

right do not satisfy the "fairly presented" standard for exhaustion – it is not enough to simply mention "due process," for instance.  *See Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). The Sixth Circuit has described several ways in which a petitioner properly can assert the legal and factual basis of his claim:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005).

When a claim has not been exhausted, the district court generally must dismiss the petition in its entirety, thus giving the petitioner an opportunity to fairly present the unexhausted claim to the appropriate state court.  *See Rose v. Lundy*, 455 U.S. 509, 518-20 (1982); *Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000) (holding that the AEDPA preserved the *Rose* rule that a petition including exhausted and unexhausted claims should be dismissed).  As discussed below, however, when a claim is unexhausted, but the petitioner has no remaining avenues to pursue relief in the state court, for whatever reason, the district court will analyze the petition under procedural default.  *See Buell v. Mitchell*, 274 F.3d 347, 349 (2001).

## 2.    Procedural Default

The procedural default doctrine bars federal review of the merits of a *habeas* ground for relief in two circumstances.  First, procedural default bars *habeas* review of an exhausted claim if the state courts below applied a state procedural rule and declined to address the merits of that ground. *See Wainwright*, 433 U.S. at 87.  In other words, when the last explained state

court decision rests upon procedural default, a federal district court is not required to reach the merits of a *habeas* petition's claims.      *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). Second, procedural default bars *habeas* review of an unexhausted claim when, hypothetically, a state procedural rule would now bar the unexhausted claim.[4]   Accordingly, any claim that the Court determines was procedurally defaulted, or in the case of an unexhausted claim, would now be procedurally defaulted, in the state courts generally will not be reviewable in a federal *habeas* proceeding.

Two exceptions exist, however.   A ground that has been otherwise procedurally defaulted can be rescued if the petitioner demonstrates:  1) *adequate cause* for the default, and that *actual prejudice* resulted from the alleged federal law violation; or 2) that failure to consider the claim will result in a fundamental *miscarriage of justice*.   *See Coleman v. Thompson*, 501 U.S. 722, 751 (1991) (emphasis added).  As to the first, "cause" is a *legitimate excuse* for the default, and "prejudice" is *actual harm* resulting from the alleged constitutional violation.  *See Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  To establish "cause," the petitioner must "[d]emonstrat[e] that an 'objective factor external to the defense impeded [the petitioner's] efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)), *cert. denied*, 127 S.Ct. 941 (2007).  "Prejudice" is established if the petitioner shows that he was actually prejudiced as a result of the claimed constitutional error.  *See United States v. Frady*, 456 U.S. 152, 170 (1982).  If a petitioner fails

---

[4] This second circumstance is important in this case with respect to Ground One of Cvijetinovic's petition.

to show sufficient cause for his procedural default, a  reviewing court need not address the prejudice prong.  *See Smith v. Murray*, 477 U.S. 527 (1986).

To determine whether a ground has been procedurally defaulted, a federal court must determine whether the state courts below addressed the ground's merits.  To make that determination, federal courts must rely on the presumption that there are no independent and adequate state grounds for a state court decision absent a clear statement to the contrary.  *See Coleman*, 501 U.S. at 735.  Applying this presumption, and considering the "cause and prejudice" exception identified above, the Sixth Circuit established a four-step analysis in *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), to determine whether a ground has been procedurally defaulted.  The *Maupin* test requires federal courts to determine:

(1)    whether the petitioner failed to comply with an applicable state procedural rule;

(2)    whether the state courts actually enforced the state procedural sanction;

(3)    whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

In her R&R, the Magistrate Judge analyzes both exhaustion and procedural default in greater detail, and concludes that they apply to several of Cvijetinovic's claims.

### B.    Merits Review

When the petitioner has satisfied the procedural prerequisites, the AEDPA sets forth the standard by which federal courts review the merits of properly-asserted grounds for relief.  In pertinent part, the AEDPA provides:

(d)    An application for a writ of *habeas corpus* on behalf of a

10

> person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

After passage of the AEDPA, the various circuits interpreted the standard to be applied differently under these provisions.[5]  In response to these nationwide variations, the Supreme Court directly addressed the meaning of the AEDPA's statutory language and, as the Sixth Circuit has confirmed, announced that the statute "places a new <u>constraint</u> on the power of a federal *habeas* court to grant a state prisoner's application for a *writ of habeas corpus* with respect to claims adjudicated on the merits in state court."  *Campbell v. Coyle*, 260 F.3d 531, 539 (6th Cir. 2001) (*quoting Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (emphasis added).

The Supreme Court clarified the language of § 2254(d)(1), and held that:

---

[5] *Compare Green v. French*, 143 F.3d 865 (4th Cir.1998), *and Nevers v. Killinger*, 169 F.3d 352, 358 (6th Cir. 1999)*, with Long v. Humphrey*, 184 F.3d 758 (8th Cir.1999), *and Matteo v. Superintendent, SCI Albion*, 171 F.3d 877 (3d Cir. 1999).

11

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion <u>opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts</u>. Under
> the "unreasonable application" clause, a federal habeas court may grant
> the writ if the state court identifies the correct governing legal principle
> from this Court's decisions but <u>unreasonably applies</u> that principle to the
> facts of the prisoner's case.

*Williams*, 529 U.S. at 412-413 (emphasis added).  The Court offered additional guidance

regarding the meaning of "unreasonable application." A state-court opinion can also engender

the 'unreasonable application' of Supreme Court precedent if it "either unreasonably extends

or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new

context." *Williams*, 529 U.S. at 409.  Further, the Court declared that "a federal habeas court

making the 'unreasonable application' inquiry should ask whether the state court's application

of clearly established federal law was <u>objectively unreasonable</u>." *Id.* (Emphasis added).

Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas

court may not issue the writ simply because that court concludes in its independent judgment

that the relevant state-court decision applied clearly established federal law erroneously or

incorrectly.  Rather, that application must also be unreasonable." *Id.*

Additionally, in reviewing *habeas* petitions, federal courts are obliged to "accept as

valid a  state court's interpretation of state law and rules of practice of that state."  *Vroman v.

Brigano,* 346 F.3d 598, 604 (6th Cir. 2003); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th

Cir. 1986).  Similarly, they are not free to ignore the pronouncement of a state appellate court

on matters of state law.  *See Central States, Southeast & Southwest Areas Pension Fund v.

Howell*, 227 F.3d 672, 676 (6th Cir. 2000).  The standard of review applied to the merits of a

petition for a *writ of habeas corpus*, therefore, is a stringent one.

12

III.     **ANALYSIS OF THE MAGISTRATE JUDGE'S R&R**

The Magistrate Judge concluded that all of the claims asserted in Cvijetinovic's petition should be DENIED, and his case DISMISSED.  Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a *de novo* review of those portions of the R&R to which Cvijetinovic has objected. Cvijetinovic filed Objections to the R&R, raising at least one objection to the Magistrate Judge's analysis of each of the four grounds.  Over half of the eighteen pages of "Objections" is copied verbatim from Cvijetinovic's Traverse (Doc. 14), however.  These portions of Cvijetinovic's "Objections" are not objections, but literally re-statements of arguments Cvijetinovic included in his Traverse, and addressed by the Magistrate Judge in her R&R.  Such "general objections" do not serve the purposes of Federal Rule of Civil Procedure 72(b), which requires the Court to conduct a *de novo* review of the portions of the Magistrate Judge's R&R to which a party objects, and are equivalent to a failure to object.  *See Jones v. Moore*, No. 3:04CV7584, 2006 WL 903199, at *7 (N.D. Ohio Apr. 7 2006) (Manos, J.).  Accordingly, the Court will address only the specific objections Cvijetinovic raised.[6]

First, the R&R sets forth the procedural history of the case, culminating in the filing of this petition for *writ of habeas corpus*.  Doc. 16 at 2-5.  Next, the R&R turns to Cvijetinovic's four grounds for relief, analyzing each in turn.  *Id.* at 5-24.  The Court will address each Ground in succession, although, ultimately, the Court **ADOPTS** the R&R with respect to all claims except Cvijetinovic's claims under *Blakely v. Washington*, 542 U.S. 296 (2004).

---

[6] In addition to the Objections Cvijetinovic filed, the Respondent filed a Response to the Objections (Doc. 20), and both parties have subsequently filed supplemental responses (Docs. 21-24) identifying case authority that they argue is relevant to resolving this petition.  Because the Respondent's Response to Cvijetinovic's Objections and the parties' supplemental responses are limited to the issues raised by Cvijetinovic's proper Objections, the Court will also consider these filings in the course of addressing the Objections.

**A.      Ground One – Imposition of Sentence Exceeding the Statutory Minimum**

**1.      The R&R's Recommendation: DISMISS**

With respect to the first ground – imposition of a sentence in excess of the minimum on the basis of facts not alleged in the indictment, found by a jury, or admitted by Cvijetinovic – the Magistrate Judge concluded both that Cvijetinovic failed to exhaust the claim and that no avenues remain for doing so because that claim would be barred by application of Ohio procedural default rules.

The basis of Cvijetinovic's first ground for relief is the Supreme Court's holding in *Blakely v. Washington*, 542 U.S. 296 (2004).  In *Blakely*, the Supreme Court refined the rule in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  In *Apprendi*, the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.  *Blakely* clarified *Apprendi* by defining "statutory maximum" as the highest sentence a judge may impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  *Blakely*, 542 U.S. at 303.   After *Blakely*, any sentence based on, or enhanced by, judicial fact-finding pursuant to a mandatory[7] sentencing scheme, as described in *Apprendi* and *Blakely*, is unconstitutional.

The Magistrate Judge first concluded that Cvijetinovic did not fairly present this claim as an argument under federal constitutional law because it was framed strictly in terms of state

---

[7] In *Blakely*, the Supreme Court distinguished two prior cases in which the statutory sentencing *permitted*, but did not *require*, judicial fact-finding in order to enhance a sentence.  *See Blakely*, 542 U.S. at 304 (citing *McMillian v. Pennsylvania*, 477 U.S. 79 (1986) and *Williams v. New York*, 337 U.S. 241 (1949)).  Thus, the holding in *Blakely* applies to mandatory sentencing schemes (*i.e.*, statutes requiring judicial fact-finding in order to enhance a sentence), but not permissive sentencing schemes.

14

law.  Therefore, Cvijetinovic did not give the state court an opportunity to analyze the *Blakely* claim and it has not been exhausted.  Doc. 16 at 6-7.  While, normally, a *habeas* court may not entertain a petition which contains both exhausted and unexhausted claims, the Sixth Circuit has clarified that a *habeas* court may proceed to entertain a "mixed" petition if it determines that a return to state court on the unexhausted claim would be futile.  *See Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001).  A return to state court is futile in those circumstances where no further state court avenues for relief remain.  Based on this principle, the Magistrate Judge concluded that she could resolve the issues presented in Cvijetinovic's petition because she found that his unexhausted claim was procedurally defaulted, thereby barring any further avenues of relief in state court.

On the question of procedural default, after discussing the applicable standard, the Magistrate Judge concluded that *res judicata* would bar the *Blakely* claim because Cvijetinovic did not raise it as a federal constitutional claim at trial, on direct appeal or in a post-conviction proceeding.  She found that *res judicata* is regularly applied by Ohio courts and is recognized by the Sixth Circuit as an adequate and independent ground for procedural default.  *Id*. at 8-11. Therefore, under the *Maupin* test set forth above, the Magistrate Judge found that procedural default would bar Cvijetinovic's first claim unless he could establish cause and prejudice for that default.  The Magistrate Judge concluded that Cvijetinovic cannot establish cause because, although *Blakely* was not decided until after his appeal had been dismissed by the Ohio Supreme Court, the legal basis of his claim was presaged by *Apprendi* in 2000 and that he should have been on notice of the need to assert his claim during his direct appeals in state court.  *Id*. at 12-13 (citing *United States v. Smith*, 241 F.3d 546, 548-49 (7th Cir. 2001); *McCoy*

*v. United States*, 266 F.3d 1245, 1258-59 (11th Cir. 2001); *United States v. Sanders*, 247 F.3d 139, 145-46 (4th Cir. 2001)).

### 2. Cvijetinovic's Objections

In his Objections, Cvijetinovic argues that *Blakely* applies to his claims because it was decided while his case was still pending on direct appeal, *i.e.*, between the time the Ohio Supreme Court dismissed his direct appeal and the filing of his petition for a *writ of certiorari* to the United States Supreme Court. He argues that he cited *Blakely* in his brief to the United State Supreme Court, and that that filing was his first opportunity to do so. Furthermore, he argues that, based on *Blakely*, the Ohio Supreme Court in *State v. Foster*, 109 Ohio St. 3d 1 (Ohio 2006), declared unconstitutional the portions of Ohio's sentencing guidelines requiring (or permitting) judicial fact-finding for sentencing enhancements and consecutive sentences. Cvijetinovic argues that, because a sentence based on judicial fact-finding is now unconstitutional under *Blakely* and *Foster*, his sentence is void and *habeas* relief is justified.[8] Doc. 19-1.

---

[8] In *Foster*, the Ohio Supreme Court held:

> Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* . . . . As was reaffirmed by the Supreme Court in *Booker*, '[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.' [*United States v.*] *Booker*, 543 U.S. [220] at 244 [(2005)].
>
> Because R.C. 2929.14(B) and (C) and 2929.19(B)(2) require judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant, they are unconstitutional. Because R.C. 2929.14(E)(4) and 2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before imposition of consecutive sentences, they are unconstitutional. Because R.C. 2929.14(D)(2)(b) and (D)(3)(b) require judicial finding of facts not proven to a

16

In addition, in his Supplemental Response in Support of his petition, Cvijetinovic argues that he could *not* have anticipated *Blakely* based solely on the rule in *Apprendi*.  Docs. 23-24.  In support of this argument, he cites several recent cases in which district courts within the Sixth Circuit granted *habeas* relief after *rejecting* the argument that the petitioner had procedurally defaulted his *Blakely* claims by not raising *Apprendi*.  *See id.* (citing *Villagarcia v. Warden, Noble Correctional Inst.*, No. 2:05cv810 (S.D. Ohio Mar. 30 2007); *Noland v. Hurley*, 523 F. Supp. 2d 659, 667-68 (S.D. Ohio 2007) (citing *United States v. Burgess*, 142 Fed. Appx. 232, 241 (6th Cir. 2005) (unpublished))).

---

> jury beyond a reasonable doubt or admitted by the defendant before repeat-violent-offender and major-drug-offender penalty enhancements are imposed, they are unconstitutional.

*Foster*, 109 Ohio St. 3d at 25 (citing *Apprendi*, 530 U.S. 466 (2000) and *Blakely*, 542 U.S. 296 (2004)).  With respect to the remedy for the *Blakely* violation, the Ohio Supreme Court severed the offending provisions noted above and held as follows:

> The following sections, because they either create presumptive minimum or concurrent terms or require judicial fact-finding to overcome the presumption, have no meaning now that judicial findings are unconstitutional: R.C. 2929.14(B), 2929.19(B)(2), and 2929.41. These sections are severed and excised in their entirety, as is R.C. 2929.14(C), which requires judicial fact-finding for maximum prison terms, and 2929.14(E)(4), which requires judicial findings for consecutive terms. R.C. 2953.08(G), which refers to review of statutory findings for consecutive sentences in the appellate record, no longer applies. We also excise R.C. 2929.14(D)(2)(b) and (D)(3)(b), which require findings for repeat violent offenders and major drug offenders.

*Id*. at 29.  Notably, Cvijetinovic was sentenced pursuant to R.C. 2929.14(B) – *i.e.*, requiring "judicial fact-finding to overcome the presumptive minimum" -- and 2929.14(E)(4) – requiring "judicial findings for consecutive terms."  The former is analyzed under Ground One of Cvijetinovic's petition while the latter falls under Ground Four.

17

### 3.      Analysis

This claim requires close analysis because it implicates multiple and overlapping principles of *habeas* law.   Ultimately, although the Magistrate Judge's conclusion is not unreasonable, the Court disagrees with it.   Instead, the Court finds that Cvijetinovic did not procedurally default his *Blakely* claim by failing to assert that his sentence was invalid on unconstitutional grounds *in anticipation* of the Supreme Court's holding in *Blakely*.   Because Cvijetinovic's sentence is unconstitutional under *Blakely*, he is entitled to re-sentencing.   There are several threshold issues to address prior to reaching the merits of the *Blakely* claim, however.

### i.      Whether the *Blakely* Claim is Cognizable

The Sixth Circuit has clearly stated that *Blakely*, 542 U.S. 296 (2004), may not be applied retroactively to cases on collateral review.  *See Humphress v. United States*, 398 F.3d 855, 860-63 (6th Cir. 2005); *United States v. Saikaly*, 424 F.3d 514, 517 (6th Cir. 2005); *see also Winters v. Warden, Noble Correctional Institute*, No. 1:06cv428, 2007 WL 2733995, at *5-6 (S.D. Ohio Sept. 13, 2007).   That is, a *habeas* petitioner may *not* assert a *Blakely* challenge to a conviction that became final on direct review prior to June 24, 2004 – the date *Blakely* issued.  *See Winters*, 2007 WL 273395, at *5; *see also Browning v. State of Ohio, Warden*, No. 2:06cv5, 2006 WL 2583381, at *6-7 (S.D. Ohio Sept. 2 2006).   A conviction becomes "final" on "direct review" when the time expires for filing a petition for a *writ of certiorari* in the United State Supreme Court.  *See Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000); *Johnson v. Hudson*, No. 3:07cv95, 2007 WL 4248188, *4 (N.D. Ohio July 10, 2007) (citing *Bell v. State of Maryland*, 378 U.S. 226, 232 (1964)).   Therefore, a *Blakely*

18

challenge raised in a *habeas* petition is not cognizable unless the conviction challenged became final on direct review *after* June 24, 2004.

Cvijetinovic's conviction became final on direct review after *Blakely* was decided, though barely so.   Specifically, on May 26, 2004, the Ohio Supreme Court dismissed Cvijetinovic's appeal.  On June 24, 2004, the United States Supreme Court issued *Blakely*.  On August 13, 2004, Cvijetinovic timely petitioned the United States Supreme Court for a *writ of certiorari*, asserting *Blakely*.   Thus, by a narrow margin, Cvijetinovic's *Blakely* claim is cognizable.

### ii.      Whether Cvijetinovic Exhausted his *Blakely* Claim

Based on the exhaustion principles articulated above, the Magistrate Judge concluded that Cvijetinovic failed to exhaust his *Blakely* claim.  The Court agrees.[9]   Although his state court appeals raised due process claims that are amenable to a *Blakely* interpretation – *e.g.*, that the trial court improperly sentenced him in excess of the statutory minimum based on judicial fact-finding – the claim is unexhausted because he did not "fairly present" the claim under federal law in any of his *state* court proceedings.  *See O'Sullivan*, 526 U.S. at 845; *Whiting*, 395 F.3d at 613.  Specifically, in objecting to his sentence, Cvijetinovic did not cite to any particular provisions of the Federal Constitution, did not cite either federal or state cases employing federal constitutional principles and did not resort to well-recognized constitutional principles in support of those objections.  Instead, he focused only on the extent to which he claimed that the state trial court had violated specific state statutory sentencing dictates – pointing to O.R.C. 2929.14(B) and 2929.12(B).  In support of these contentions, moreover, the only case law to which he cited was Ohio case law interpreting these state statutory dictates.

---

[9] Indeed, neither Cvijetinovic nor Respondent objects to this particular concession.

Given the framework of his arguments, the state courts understandably addressed them solely in terms of the then-governing state statutes describing the state sentencing scheme.  Under such circumstances, it is clear that Cvijetinovic has not given the Ohio courts an opportunity to rule on his federal *Blakely* claim prior to seeking *habeas* relief.  *Id.*  Simply, Cvijetinovic failed to exhaust his *Blakely* claim because *no* Ohio court, and certainly not the full complement of Ohio courts, has had an opportunity to address the claim.  *O'Sullivan*, 526 U.S. at 845.

As a matter of judicial comity, there is a "strong presumption" in favor of requiring a state prisoner to pursue all of his available remedies.  *Granberry v. Greer*, 481 U.S. 129, 131 (1987); *see also Rockwell v. Yukins*, 217 F.3d 421, 425 (6th Cir. 2000) (citing *Rose*, 455 U.S. at 518-19 as "requiring the dismissal of mixed petitions in the interests of preserving comity, relieving district courts of the 'difficult if not impossible task of deciding when claims are related,' and reducing the temptation on the part of district courts to consider unexhausted claims").[10]

On the other hand, as noted by the Magistrate Judge, "a *habeas* court need not wait for exhaustion if it determines that a return to state court would be futile."  Doc. 16 at 7 (citing *Lott*, 261 F.3d at 608).  An exception to dismissal of unexhausted claims arises when a petitioner has failed to present his claims to the state courts, but is now barred from pursuing relief in state court because of a procedural rule.  *See Rust*, 17 F.3d at 160.  Under those circumstances, dismissal due to exhaustion does not further the purposes of the exhaustion

---

[10] The strong policy in favor of allowing the state courts to rule on a claim before it is presented to the federal courts on *habeas* review indicates that citing *Blakely* in his brief to the United States Supreme Court was not sufficient to exhaust the claim.  Obviously, the United States Supreme Court is not a state court, and, moreover, the Supreme Court merely denied the request for a *writ of certiorari*.

20

requirement because the petitioner no longer has state court remedies to exhaust.  *Id*. Therefore, the next question is whether avenues for relief still exist in the Ohio courts.

### iii.    Whether Available State Remedies Exist

The Magistrate Judge concluded that the exception to the exhaustion requirement applies to Cvijetinovic's *Blakely* claim because she found that the state court would apply the doctrine of *res judicata* and find that Cvijetinovic's failure to raise his *Blakely* claim at sentencing and on appeal therefrom barred his ability to assert it now.  Indeed, the Ohio Supreme Court has made it clear that it would apply *res judicata* to bar Cvijetinovic's claims. Although the Ohio Supreme Court in *Foster* declared the provisions under which Cvijetinovic was sentenced unconstitutional in light of *Blakely*, it only ordered re-sentencings in cases pending on direct review at the time *Foster* was decided.  *See Foster*, 109 Ohio St. 3d at 31; *see also*, *e.g.*, *State v. Elko*, No. 88441, 2007 WL 1559297, *2 (Ohio Ct. App. May 31 2007) (dismissing post-conviction motion for lack of jurisdiction and citing Ohio cases holding that *Foster* applies only to cases that were pending on direct review). Therefore, Cvijetinovic's claim is now barred under Ohio law, despite the fact that it is unexhausted.

### iv.    Procedural Default Analysis

Having determined that, despite the fact that Cvijetinovic's *Blakely* claim is unexhausted, all avenues of state court relief are now closed to Cvijetinovic, the Magistrate Judge appropriately turned to procedural default under the *Maupin* test.  *See Buell*, 274 F.3d at 349.  Cvijetinovic does not object to the Magistrate Judge's findings with respect to the first three prongs of the *Maupin* test:  that he did not raise the *Blakely* issue before the state courts, that *res judicata* is an applicable, regularly enforced, procedural bar, and that the Sixth Circuit

recognizes that procedural bar as an adequate and independent state grounds for resolution. Doc. 16 at 9-11.  He does, however, object to the Magistrate Judge's finding under the "cause and prejudice" prong of the *Maupin* test, specifically that his claim is procedurally barred because he did not raise it under *Apprendi* at the state court level.  Docs. 23-24.

Consequently, the issue now before the Court is whether Cvijetinovic can establish cause and prejudice to overcome procedural default.  The Court finds that he can, although this is a close question.

### a.      Cause

"Cause" in the *habeas* context is simply a legitimate excuse for procedural default, although the standard for establishing it is high.    As set forth above, the petitioner must "[d]emonstrat[e] that an 'objective factor external to the defense impeded [the petitioner's] efforts to comply' with the state procedural rule."  *Franklin*, 434 F.3d at 417 (quoting *Murray*, 477 U.S. at 488).  The Supreme Court has identified two objective impediments that could constitute cause: (1) where the factual or legal basis for a claim was not reasonably available to defense counsel, and (2) where state officials rendered compliance with the procedural rule at issue impracticable.  *Murray*, 477 U.S. at 488; *see also Reed v. Ross*, 468 U.S. 1, 13-14 (1984). Here, Cvijetinovic's argument proceeds under the first scenario; *i.e.*, he argues that the factual and legal basis of his *Blakely* claim was not available at the time of his state court proceedings. He did not assert a federal challenge to his sentence under the specific rule in *Blakely* because, prior to June 24, 2004 (the date *Blakely* issued), no such claim existed.  He argues that he asserted the claim as soon as it was available.

22

The R&R recognized that *Blakely* was decided *after* the Ohio Supreme Court dismissed Cvijetinovic's direct appeal, but concluded that this is irrelevant under the standard for "cause."  Doc. 16 at 11.  According to the R&R, the fact that *Blakely* is an extension of the constitutional issue in *Apprendi* is enough to require a *habeas* petitioner to raise it in state court or face procedural default.  In support of her conclusion, the Magistrate Judge quotes with approval a Seventh Circuit opinion discussing whether a petitioner was required to anticipate the Supreme Court's later decision in *Apprendi* when attacking his earlier-imposed federal sentence on direct review:

> The Court agrees with the reasoning of the Seventh Circuit with respect to a similar claim under *Apprendi*:
>
>> . . . the lack of precedent for a position differs from "cause" for failing to make a legal argument. Indeed, even when the law is against a contention, a litigant must make the argument to preserve it for later consideration. *See Bousley v. United States*, 523 U.S. 614 (1998); *Engle* [*v. Isaac*], 456 U.S. [107,] 130 n. 35 [ (1982) ] (that a legal argument would have been unpersuasive to a given court does not constitute "cause" for failing to present that argument). "Cause" means some impediment, and [the petitioner] does not contend that any outside force impeded his legal defense in 1992. (Nor does he contend that counsel was ineffective for failure to anticipate *Apprendi*; no such argument would be tenable.) The lack of any reasonable legal basis for a claim may constitute "cause," *see Reed v. Ross*, 468 U.S. 1, 16 (1984), but the foundation for *Apprendi* was laid long before 1992. Other defendants had been making *Apprendi*-like arguments ever since the Sentencing Guidelines came into being, and in *McMillan v. Pennsylvania*, 477 U.S.79 (1986), the Court addressed on the merits an argument along similar lines. [The petitioner] could have invoked the themes in *McMillan*, and for that matter *In re Winship*, 397 U.S.358 (1970), just as the Justices themselves did in *Apprendi*. *See Garrott v. United States*, No. 99-2921, [238 F.3d 903] (7th Cir. Jan.30, 2001). Thus [the petitioner] has not established cause . . . .
>
> *United States v. Smith*, 241 F.3d 546, 548-49 (7th Cir. 2001); *see also McCoy v. United States*, 266 F.3d 1245, 1258-59 (11th Cir. 2001); *United States v. Sanders*, 247 F.3d 139, 145-46 (4th Cir. 2001).

23

Doc. 16 at 12-13.  Based on this high standard for "cause" to assert a new constitutional claim, the Magistrate Judge recommended dismissal of Cvijetinovic's *Blakely* claim.

The definition of "cause" for *habeas* purposes in the context of a novel constitutional claim was established in *Reed v. Ross*, 468 U.S. 1 (1984).  In *Reed*, the Supreme Court held that a petitioner can establish cause for failure to raise a claim if the constitutional basis of the claim is so novel that its legal basis was not reasonably available to counsel.  *Id*. at 17.  As stated in *Reed*:

> [T]he cause requirement may be satisfied under certain circumstances when a procedural failure is not attributable to an intentional decision by counsel made in pursuit of his client's interests. And the failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the requirement is met. If counsel has no reasonable basis upon which to formulate a constitutional question . . . it is safe to assume that he is sufficiently unaware of the question's latent existence that we cannot attribute to him strategic motives of any sort.
> . . .
> In addition, if we were to hold that the novelty of a constitutional question does not give rise to cause for counsel's failure to raise it, we might actually disrupt state-court proceedings by encouraging defense counsel to include any and all remotely plausible constitutional claims that could, some day, gain recognition. Particularly disturbed by this prospect, Judge Haynsworth, writing for the Court of Appeals in this case, stated:
>
>> "If novelty were never cause, counsel on appeal would be obliged to raise and argue every conceivable constitutional claim, no matter how far fetched, in order to preserve a right for post-conviction relief upon some future, unforeseen development in the law. Appellate courts are already overburdened with meritless and frivolous cases and contentions, and an effective appellate lawyer does not dilute meritorious claims with frivolous ones. Lawyers representing appellants should be encouraged to limit their contentions on appeal at least to those which may be legitimately regarded as debatable." 704 F.2d, at 708.
>
> Accordingly, we hold that where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures. We therefore turn to the question whether the . . . issue, which respondent Ross has raised in this action, was sufficiently novel at the time of the appeal from his conviction to excuse his attorney's failure to raise it at that time.

24

*Reed*, 468 U.S. at 14-16. In addition, the Supreme Court provided an example of the obvious

practical problem with requiring a defendant to raise all novel and unavailing arguments:

> For instance, in *Hurtado v. California*, 110 U.S. 516 . . . (1884), this Court held
> that indictment by a grand jury is not essential to due process under the
> Fourteenth Amendment. Surely, we should not encourage criminal counsel in
> state court to argue the contrary in every possible case, even if there were a
> possibility that some day *Hurtado* may be overruled.

*Id*. at 16 n.11.

    *Reed* identified three categories of "new" constitutional rules: (1) decisions which

"explicitly overrule one of our precedents;" (2) "decisions which overturn a longstanding and

widespread practice to which this Court has not spoken, but which a near-unanimous body of

lower court authority has expressly approved;" and (3) decisions which "disapprove a practice

this Court arguably has sanctioned in prior cases." *Id*. at 17 (quoting *United States v. Johnson*,

457 U.S. 537, 551 (1982)).  Cases falling into the first two categories and given retroactive

application are clearly new rules and "the failure of a defendant's attorney to have pressed such

a claim before a state court is sufficiently excusable to satisfy the cause requirement." *Id*.

Cases falling into the third category are less clear.  Applying this standard, the Supreme Court

held that the issue in *Reed* – whether the defendant should have anticipated the decision

allowing him to challenge a jury instruction placing certain burdens of proof on a criminal

defendant – fell into the third category, and was sufficiently novel to excuse procedural default.

*Id*. at 20.

    *Bousley*, also cited by the Magistrate Judge, arguably made the test for cause based on

an intervening, novel legal rule more stringent.  In *Bousley*, the Supreme Court held that the

petitioner procedurally defaulted his *habeas* claim by not arguing that the definition of "use" in

the federal statute prohibiting the "use" of a firearm "during and in relation to a drug trafficking crime" required more than mere "possession." *Bousley*, 523 U.S. at 616.  After the defendant's conviction was affirmed, the Supreme Court clarified the statutory meaning of "use" in *Bailey v. United States*, 516 U.S. 137 (1996), defining it as "active employment." Although the petitioner contended that such an argument would have been "futile" prior to *Bailey*, the Supreme Court rejected his argument.  *Bousley*, 523 U.S. at 622-23.  The Court stated:

> Petitioner also contends that his default should be excused because, "before *Bailey*, any attempt to attack [his] guilty plea would have been futile." . . . This argument, too, is unavailing. As we clearly stated in *Engle v. Isaac*, 456 U.S. 107 . . . (1982), "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.' " *Id.*, at 130, n. 35 . . . Therefore, petitioner is unable to establish cause for his default.

*Id.* at 623.  In holding that the *Bailey* decision did not excuse procedural default, the Court also noted that, prior to *Bailey*, the definition of "use" had been a frequently litigated issue in the lower courts and that the lower courts had not been uniform in their interpretation of that term. *Id.* at 622.  After *Bousley*, some courts, including those cited in the R&R, have focused on the treatment of "futility" in *Bousley* and have, in turn, concluded that *Bousley* greatly limits the circumstances which can justify a finding of cause under *Reed*.  *See e.g.*, *McCoy*, 266 F.3d at 1258-59.

This case requires the Court to carefully examine the impact of *Bousley* on the analytical approach announced in *Reed*.  Therefore, the legal and factual context of the *Bousley* decision is particularly important.  First, the specific legal issue in *Bousley* was "a split among the circuits over the permissibility of post-*Bailey* collateral attacks on § 924(c)(1) convictions obtained pursuant to guilty pleas."  *See Napier v. United States*, 159 F.3d 956, 961 (6th Cir.

26

1998).  The Sixth Circuit has applied *Bousley* in a narrow set of circumstances – it has

specifically noted that "*Bousley* was limited to the issue before the Court—guilty pleas."  *Id.*

(quoting *Hillard v. United States*, 157 F.3d 444, 450 n.4 (6th Cir. 1998)).  For example, in

*Hillard*, the Sixth Circuit held that the petitioner had established "cause" for failing to object to

a jury instruction that was correct prior to *Bailey* but erroneous after *Bailey*.  *Hillard*, 157 F.3d

at 450.[11]  Like, Cvijetinovic, Hillard raised his constitutional claim based on new case law as

soon as the claim was available to him, and in the course of his direct appeal.  Despite the fact

that Hillard *could* have objected to the jury instruction but failed to do so, the Sixth Circuit did

not interpret *Bousley* as requiring procedural default.  *Id.* at 450 n.3.  Thus, in finding that

Hillard had established cause, the Sixth Circuit did not even concern itself with whether it

would have been "futile" for Hillard to object to the jury instruction regarding "use" under §

924(c)(1).  Cases like *Napier* and *Hillard* demonstrate that the Sixth Circuit applies *Bousley*

narrowly.[12]

Second, as noted above, the  "new rule" at issue in *Bousley* was the Supreme Court's

interpretation of the term "use" of a firearm "during and in relation to" drug trafficking under

18 U.S.C. § 924(c).  Bousley was trafficking drugs out of the garage of his home, and stored a

gun in his bedroom.  After he was arrested for drug trafficking and the gun was found in his

bedroom, he pled guilty to charges under 18 U.S.C. § 924(c).  On appeal, Bousley challenged

---

[11] *See also Quigley v. United States*, 172 F.3d 873, 1998 WL 964248, at *2 (6th Cir. 1998) (table)
(finding cause under *Reed*:  "Considering that *Bailey* was decided after Quigley's direct appeal,
the novelty of its holding provides cause for his failure to challenge the jury instruction.")

[12] In general, when then Sixth Circuit has relied on *Bousley* to preclude a finding of "cause," it
has done so on the same facts as *Bousley* itself.  That is, a challenge to a guilty plea entered prior
to *Bailey* and challenged on *habeas* after *Bailey*.  *See Flowers v. United States*, 208 F.3d 213 (6th
Cir. 2000); *Terry v. United States*, 172 F.3d 873 (6th Cir. 1998) (table).

his sentence, but did not challenge his guilty plea or the sufficiency of the facts underlying the indictment.  *Bousley*, 523 U.S. at 617.  At the time, the D.C. Circuit and the Second Circuit used a factor-based test to address the "use" element of the crime.  *See United States v. Bailey*, 36 F.3d 106, 113-14 (D.C. Cir. 1994). The other Circuits focused on the accessibility and/or proximity of the gun in defining "use."  *Id*.  In his *habeas* petition, Bousley argued that he had not raised the issue because it would have been "futile" to do so in light of precedent within the Eighth Circuit, and other Circuits, finding "use" in factually similar situations.  *See Id.* at 623. It was in this context that the Supreme Court quoted *Engle* for the principle that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time."  *Id*. at 623 (omitting citations).

Thus, *Bousley* requires a petitioner to raise an issue of statutory interpretation on appeal when there is some disagreement among the lower courts regarding the applicable definition of the pertinent term and when the Circuits' tests emphasize the fact-intensive nature of the question.  As employed in *Bousley*, "futility" simply means that the fact-intensive argument of statutory interpretation Bousley could have presented had been raised and consistently rejected before, particularly by courts within the Eighth Circuit.  *Bousley* thus makes it clear that a petitioner cannot forgo a fact-intensive argument of statutory interpretation, even in the face of arguably analogous case law indicating that the argument would not succeed.

Undoubtedly, the standard for cause after *Bousley* and *Reed* is high.  However, it is important to recognize that *Reed* still has vitality after *Bousley*.  This is true for several reasons. First, the language in *Bousley* comes from *Reed* and *Engle v. Isaac*, 546 U.S. 107 (1982).  With respect to futility, *Bousley* quotes *Engle* in noting that "futility cannot constitute cause if it

28

means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley*, 523 U.S. at 623 (quoting *Engle* 456 U.S. at 130 n.35).  While the meaning of futility in *Engle* was not entirely clear, the Supreme Court made clear in *Reed* that a *constitutional* rule that was new – but not created out of whole-cloth – was sufficiently novel to excuse procedural default.  *See Reed*, 468 U.S. at 20.  In *Reed*, the Supreme Court reversed settled law requiring a criminal defendant to bear the burden of proving at his murder trial that he did not act in the "heat of passion."  *Id.* at 7.  At the time, it would have been 'futile' for the defendant to argue that the government should bear the burden of proof on the "heat of passion" defense. Nonetheless, the Supreme Court did not procedurally default the defendant's *habeas* claim under the new rule because he failed to raise it in the state courts.   In fact, as discussed above, *Reed* explicitly recognized that, as a practical matter, an appellate lawyer must not be required to raise every futile argument under the sun in order to preserve her client's rights.  While *Bousley* came after *Reed*, it neither criticized nor overruled it.  *See Bousley*, 523 U.S. at 622-23.  This Court cannot conclude, accordingly, that the third prong of *Reed* has no vitality; it cannot for instance agree with some courts that, after *Bousley*, <u>every</u> argument that could be made, must be made and that cause can only be shown based on an "unavailable claim" where the Supreme Court chooses to expressly reverse itself.

Second, it is clear *Reed* has continuing vitality because there is a clear distinction between the "novel" constitutional rules at issue in *Reed* and the argument *Bousley* required the petitioner in that case to anticipate.  The new rule at issue in *Reed* reversed the burden of proof regarding the "heat of passion" defense.   Burden of proof is a legal concept that exists independent of any factual interpretation – the court instructs the jury that the burden is either

29

on the plaintiff or the defendant.  In contrast, the new rule in *Bousley* clarified the definition of a vague statutory term – "use."  This distinction is relevant to the meaning of "futile" in *Bousley*.  There is a material difference between (1) requiring a defendant to argue that, as a matter of statutory interpretation, the law as applied to the facts does not require a certain result; and (2) requiring a defendant to argue that an applicable legal doctrine is unconstitutional.  This is especially true where courts in circuits other than Bousley's had employed differing interpretations of the statutory term which was clarified in *Bailey*.  *See Bailey*, 36 F.3d at 113-14.  It is important, accordingly, to keep in mind the context in which the Supreme Court's statement in *Bousley* that "futility cannot constitute cause **if it means simply that a claim was unacceptable to that particular court at that particular time**" was made.  That is, even though case law in a particular circuit may have made it unlikely a claim could survive before a particular district court, judicial efficiency actually dictates requiring the defendant to raise it or waive it where the Supreme Court has not spoken to the issue *and* application of the legal principle at issue is very fact-dependent.  On the other hand, judicial efficiency is compromised by requiring a defendant to raise every conceptual constitutional challenge imaginable to applicable legal doctrines.  Accordingly, it is possible to harmonize *Bousley* and *Reed* by acknowledging the new rule at issue in each.  The *Reed* approach remains viable.

In fact, the three categories of new rules identified in *Reed* are useful to resolving the issue of whether *Blakely* is a novel constitutional rule after *Apprendi*.  In *Reed*, the Supreme Court noted that new rules which "disapprove a practice this Court arguably has sanctioned in prior cases" may be sufficiently novel to excuse procedural default.  *Reed*, 468 U.S. at 17

(quoting *Johnson*, 457 U.S. at 551). *Blakely* is such a rule. In *Apprendi*, the Court arguably sanctioned judicial fact-finding used to enhance a sentence within the range established by the sentencing guidelines. *See Apprendi*, 530 U.S. at 490. In fact, just two years after *Apprendi* was decided, all of the Circuits had expressly upheld such judicial fact-finding. *See United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002).[13] *Blakely* then unequivocally disapproved of the practice. *See Blakely*, 542 U.S. at 303. Like the new rule regarding the burden of proof in *Reed*, the new rule in *Blakely* is not a matter of statutory interpretation, but a broad legal concept. Whether the sentencing guidelines are constitutionally permissible under any application – the issue addressed in *Blakely* – is very different than the narrow question deemed anticipatable in *Bousley*. Thus, under the circumstances of this case, it is appropriate to follow *Reed* and find cause to excuse procedural default.

In addition, and more specifically, there are several important considerations that the Magistrate Judge did not address in concluding that Cvijetinovic could not establish cause based on the Seventh Circuit's reasoning in *Smith*, 241 F.3d at 548-49. First, the Sixth Circuit has rejected the notion that defendants should have anticipated *Blakely* based on *Apprendi*, and has never addressed the specific issue of whether failure to present an argument to expand *Apprendi* prior to *Blakely* precludes the defendant from establishing "cause" in the *habeas* context. Second, as noted by Cvijetinovic, at least some district courts within the Sixth Circuit have expressly rejected the notion that procedural default may be based on the petitioner's failure to present such an argument. Third, courts and commentators recognize that, strictly

---

[13] The Sixth Circuit was the last Circuit to decide that *Apprendi* permitted enhancements based on judicial fact-finding *within* the guidelines range. *Leachman*, 309 F.3d at 382 (6th Cir. 2002). When it did so, however, the Sixth Circuit noted that it had been a "minority of one" up to that point. *Id.*

31

enforced, a rule requiring an appellant to raise all futile arguments defies logic.  This Court addresses each of these points in turn.

In several different contexts, the Sixth Circuit has acknowledged that *Blakely* could not have been anticipated based on *Apprendi*.[14]  First, in *United States v. Burgess*, 142 Fed. Appx. 232, 240 (6th Cir. 2005) (unpublished), the Sixth Circuit held that failure to anticipate the rule in *Blakely* and raise it in the lower courts did not amount to ineffective assistance of counsel:

> Burgess's trial counsel cannot be deemed ineffective for failing to anticipate the Supreme Court's June 24, 2004 holding in *Blakely* that the Sixth Amendment precluded the imposition of a sentence . . . based on facts not found by a jury or admitted by the defendant.

*Burgess*, 142 Fed. Appx. at 240.  The Sixth Circuit placed particular significance on the fact that the defendant in *Burgess* had never argued that he was sentenced above the statutory maximums.

> Burgess's sentence does not raise any of the due process or Sixth Amendment concerns that precipitated the holdings in *Apprendi*, *Blakely*, or *Booker*, which involved judge-imposed sentences *above* the sentences that were authorized solely by a jury verdict or the facts admitted by the defendant.  Thus, even assuming that Burgess's counsel was in a position to argue about the potential unconstitutional application of the Sentencing Guidelines, that argument had no application (and therefore no merit) in Burgess's case.

*Id.* (emphasis in original).  Cvijetinovic, like Burgess, was sentenced below the statutory maximum, although Judge Sutula increased his sentence within the statutory range based, in part, on judicial fact-finding.  Therefore, like Burgess, Cvijetinovic did not have a claim under *Apprendi*, because every Circuit Court believed *Apprendi* permitted judicial fact-finding within

---

[14] The Sixth Circuit has recently vacated an opinion holding that counsel was ineffective because he did not argue, prior to *Blakely* but after *Apprendi*, that enhancements to a sentence based on judicial fact-finding but within the guidelines range violated the Sixth Amendment.  *See Nichols v. United States*, 501 F.3d 542 (6th Cir. 2007) *reh'g en banc granted, opinion vacated, Jan. 3, 2008*.

the guidelines range – *i.e.*, that *Apprendi* expressly sanctioned that practice.  *See United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002).

In addition, in *United States v. Clements*, 142 Fed. Appx. 223 (6th Cir. 2005) (unpublished), the Sixth Circuit held that the defendant had not forfeited his Sixth Amendment rights under *Blakely* simply because he failed to raise the argument prior to the *Blakely* decision.  Analyzing the defendant's sentence under "plain error review," the Sixth Circuit held that, despite the fact that he had not raised the issue in the lower courts, his sentence, which was based in part on facts not found by a jury or admitted by the defendant, violated substantial constitutional rights.  *Id.* at 231.  The Sixth Circuit remanded for re-sentencing.  *Id.*

Similarly, in *United States v. McDaniel*, 398 F.3d 540, 547 (6th Cir. 2005), the Sixth Circuit applied plain error review and noted several cases in which they found that the failure to specifically raise *Apprendi* prior to *Blakely* did not preclude defendants from challenging their sentence after *Blakely*.   The Court noted that a defendant's failure to identify *Apprendi* "comes as little surprise given the prior statements of this court that *Apprendi* did **not** invalidate the federal Sentencing Guidelines.  *See United States v. Koch*, 383 F.3d 436, 440 (6th Cir. 2004) (en banc) [*overruled by Booker*, 125 S. Ct. 738 (2005)]."  *McDaniel*, 398 F.3d at 547 n.3 (emphasis in original).  In fact, in *Koch*, prior to *Booker*, the Sixth Circuit stated "our Circuit has consistently turned back Sixth Amendment challenges to the Guideline enhancements so long as the resulting sentence falls below the congressionally-prescribed statutory maximum."  *Koch*, 383 F.3d at 440.

33

The Sixth Circuit used the same approach prior to *Apprendi*, as demonstrated in *United States v. Stines*, 313 F.3d 912, 917 (6th Cir. 2002).[15]  In *Stines*, the Sixth Circuit stated that the defendant had not forfeited claims based on *Apprendi* by failing to raise them prior to *Apprendi* because "[i]t would have been impossible for the defendants to have intentionally relinquished or abandoned their *Apprendi* claims considering *Apprendi* was decided after they were sentenced." *Id*. at 917.  Furthermore, the Sixth Circuit did not require the defendant to recite certain 'magic words' in order to later assert a newly recognized sentencing challenge: "In order to preserve an *Apprendi* challenge, the defendant need not utter the words 'due process' as long as it is well known that they dispute the district court's factual findings as to drug quantity." *Id*.

It is worth noting, moreover, that the position these cases articulate is also supported by this Court's experience with criminal sentencing in this Circuit.  Sixth Circuit panels have *not* required defendants to have anticipated the expansion of *Apprendi* which occurred in *Blakely*. Remands for re-sentencing post-*Blakely* have been the norm, whether or not an objection to the sentence had been lodged on constitutional grounds in the trial courts.

Finally, as Cvijetinovic points out, district courts within the Sixth Circuit have rejected the notion that a petitioner who failed to attack the constitutionality of a within guidelines

---

[15] As noted, the Magistrate Judge relies heavily on the Seventh Circuit's decision in *Smith*. Notably, *Smith* addressed "cause" in the context of anticipating *Apprendi* based on prior authority, it did not assess whether a defendant needed to anticipate *Blakely* after *Apprendi*. *Smith*, 241 F.3d at 548-49.  As the Seventh Circuit noted, the foundation of *Apprendi* was established in Supreme Court precedent well in advance of the decision itself.  *Blakely*, however, was not so anticipated, in part because the Circuit courts had recently and unanimously upheld within-guidelines enhancements based on judicial fact-finding.  While it may be arguable that *Apprendi* was presaged by prior Supreme Court case law (though the Sixth Circuit says it was not), the same is simply not true of *Blakely*.  Therefore, even if the Seventh Circuit was correct in refusing to find cause with respect to an unasserted *Apprendi* claim, the novel constitutional rule at issue here is *Blakely*, not *Apprendi*.

sentence based on *Apprendi* in the state courts is procedurally defaulted from asserting a *Blakely* claim in his *habeas* petition.  Indeed, these cases have *granted habeas* relief, despite the failure to use *Apprendi* to raise such an issue prior to *Blakely*.

In *Noland v. Hurley*, 523 F. Supp. 2d 659, 662 (S.D. Ohio 2007), District Judge Michael Watson held that the petitioner's *habeas* claim under *Blakely* was not procedurally defaulted because he did not rely on *Apprendi* to challenge his sentence in the state appellate court.  Judge Watson noted that the petitioner's sentence did not violate *Apprendi*, as it had been interpreted prior to *Blakely*, because he was not sentenced above the statutory maximum under the Ohio sentencing guidelines.  *Id*.  Furthermore, citing the Sixth Circuit's opinion in *Burgess*, *supra*, Judge Watson held that "petitioner was not unreasonable in failing to anticipate the Supreme Court's decision in *Blakely*, and is not precluded from raising his *Blakely* claim in federal habeas corpus proceedings."  *Id*.

Likewise, in *Villagarcia v. Warden, Noble Correctional Inst.*, No. 05cv810, 2007 WL 1028528 (S.D. Ohio Mar. 30 2007), District Judge Gregory L. Frost granted *habeas* relief despite the fact that the petitioner had not referred to *Apprendi* in his state court proceedings. "Petitioner's sentence did not violate *Apprendi* as that case had been interpreted prior to *Blakely*.  This Court therefore remains unpersuaded by Respondent's argument that Petitioner was required to raise his *Blakely* claim under *Apprendi* as that case had been interpreted prior to *Blakely* in order to preserve the error for federal habeas corpus review."  *Id*. at *2 (citing *Burgess*, 142 Fed. Appx. at 240).[16]

---

[16] Other district courts have held that the petitioner procedurally defaulted his *Blakely* claim by failing to raise *Apprendi*.  *See*, *e.g.*, *Furlow v. Moore*, No. 3:06cv108, 4693846 (S.D. Ohio Jan. 25 2007) (Report and Recommendation adopted by district court); *Leach v. Hudson*, 2007 WL 1115165, at *2 (N.D. Ohio Apr. 13 2007).  The Court finds their reasoning inconsistent with

Both *Noland* and *Villagarcia* note that the petitioners did not rely on *Apprendi* to attack their within-guidelines sentences because the law clearly precluded such an argument.  Under *Apprendi*, judicial fact-finding that increased a sentence within the statutory range was constitutional.  Therefore, competent counsel would have viewed an *Apprendi* argument as not just futile, but frivolous.  Likewise, Cvijetinovic was sentenced within the range provided by the Ohio sentencing guidelines and had no reason to challenge his sentence under *Apprendi*.  Implicitly, these courts refused to impose the austere definition of "cause" the Magistrate Judge employs here in the context of novel constitutional rules.

Finally, requiring an appellant to raise futile arguments because, at some point in the future, the law might change to reflect precisely their position, defies logic.  *See* Sarah P. Kelly *Novel Issues, Futile Issues, and Appellate Advocacy: The Troubling Lessons of Bousley v. United States*, 35 St. Mary's L.J. 93 (2003).[17]  This, however, is what the Magistrate Judge's interpretation of the applicable standard for "cause" under *Bousley*, 523 U.S. 614, would require.  As Kelly notes, "strict application of the principle announced in *Bousley* could lead to perverse results."  Kelly, 35 St. Mary's L.J. at 105 (citing *Brache v. United States*, 165 F.3d 99, 102 (1st Cir. 1999)).  For example, "defense counsel will have no choice but to file one 'kitchen sink' brief after another, raising even the most fanciful defenses that could be imagined based on long-term logical implications from existing precedents." *See United States v. Smith*, 250

---

Sixth Circuit precedent indicating that *Blakely* was an unanticipated extension of *Apprendi*.  The Ohio Supreme Court confirmed this perspective in *Foster*, stating that "Foster could not have relinquished his sentencing objections as a known right when no one could have predicted that *Blakely* would extend the *Apprendi* doctrine to redefine 'statutory maximum.'" *Foster*, 109 Ohio St. 3d at 11.

[17] *See also* Brent E. Newton *An Argument for Reviving the Actual Futility Exception to the Supreme Court's Procedural Default Doctrine*, 4 J. App. Prac. & Process 521 (2002).

F.3d 1073, 1077 (7th Cir. 2001) (Wood, J., dissenting).  Accordingly, the Court cannot interpret *Bousley* as actually requiring appellants to raise manifestly futile constitutional arguments in order to avoid procedural default.

Lastly, with respect to the cause prong of procedural default, the narrow definition of "cause" in the R&R is not required by the concerns for comity and finality often associated with limitations on *habeas* relief.  *See e.g.*, *Bousley*, 523 U.S. at 623 n.2.  In fact, the unusual circumstances of this case demonstrate that finding "cause" to excuse Cvijetinovic's failure to raise his *Blakely* claims does not implicate these concerns.  *Blakely* claims are not cognizable on collateral review.  Therefore, any *habeas* petitioner whose conviction became final prior to *Blakely* cannot even assert a claim for *habeas* relief.  Petitioners who were convicted after *Blakely*, or who had a fair opportunity to raise *Blakely* after it was decided and in the course of their state court appeals, would be barred by the standard rules of procedural default if they failed to raise *Blakely* in the state court.  In other words, the class of petitioners seeking this relief is extraordinarily small.  It is only by virtue of the unusual timing of Cvijetinovic's direct appeals that he (1) has a cognizable *habeas* claim that (2) he cannot present to the state courts.  In addition, after *Foster*, the Ohio courts have re-sentenced numerous defendants whose sentences resemble Cvijetinovic's.  *See Noland*, 523 F. Supp. 2d at 668 (citing Ohio cases in which Ohio courts re-sentenced defendants under *Blakely*).  Re-sentencing Cvijetinovic, and, potentially, the very few (if any) individuals who may have valid *habeas* claims like his, both procedurally and substantively, will not overburden the Ohio courts or offend comity principles, especially in light of *Foster*.

37

Accordingly, Cvijetinovic has established "cause" to excuse his procedural default. Under these unusual circumstances, it is appropriate for the Court to reach the merits of Cvijetinovic's *Blakely* claim. *See Murray*, 477 U.S. at 514 (noting that finality alone is not sufficient to compromise protection of federal rights).

### b.    Prejudice

In addition to cause, the petitioner must establish that he was actually prejudiced by the claimed constitutional error in order to overcome procedural default. *See United States v. Frady*, 456 U.S. 152, 170-72 (1982). For purposes of prejudice analysis, the Court assumes that a *Blakely* violation occurred. *Id.*; *Maupin*, 785 F.2d at 139. "Demonstrating prejudice requires showing that the trial was infected with constitutional error." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 941 (2007). The Court finds that Cvijetinovic's sentence was unconstitutional in violation of *Blakely*, and, therefore, that he was actually prejudiced. Because the Court ultimately finds that Cvijetinovic's *Blakely* claim succeeds on the merits, harmless error analysis is also required. *See Washington v. Recuenco*, 126 S. Ct. 2546, 2551-53 (2006). The reasons for finding prejudice will be articulated in detail in connection with the harmless error analysis below.

### v.    The Merits of Ground One

Turning finally to the merits of his *Blakely* claim, Cvijetinovic is entitled to *habeas* relief if his sentence was contrary to, or an unreasonable application of, clearly established federal law, as established by the United States Supreme Court. 28 U.S.C. § 2254(d). In *Blakely*, the United State Supreme Court held that a statutory sentencing scheme that allows a judge to enhance a sentence based on factual findings not found by a jury, admitted by the

38

defendant, or reflected in the jury verdict is unconstitutional.  *Blakely*, 542 U.S. at 303.  As the Ohio Supreme Court determined in *Foster*, certain provisions of Ohio's sentencing guidelines permitted sentencing enhancements based on judicial fact-finding, and thus violate *Blakely*.  *See*, *e.g.*, *Noland*, 523 F. Supp. 2d at 669-74.  There is no question, moreover, that Cvijetinovic was sentenced under the unconstitutional provisions of the Ohio sentencing guidelines that violated *Blakely*.  Section 2929.14(B) of the Ohio Revised Code required judges to impose the minimum sentence within the range, unless they found that certain facts justified imposing a higher sentence within the range.  Although entitled to the presumptive minimum sentence absent factual findings by Judge Sutula, Cvijetinovic was sentenced in excess of the presumptive minimum based on factual findings by Judge Sutula.  Accordingly, Cvijetinovic's sentence is contrary to clearly established federal law and he is entitled to *habeas* relief on the merits.

### vi.    Harmless Error

Even when the Court reaches the merits and finds that the claim succeeds, however, *habeas* relief is not appropriate unless the constitutional error actually harmed the petitioner.  *See Copeland*, 321 F.3d at 603-05.  In the Sixth Circuit, an error is harmless if "none of the defendant's substantial rights have been affected by the error."  *United States v. Oliver*, 397 F.3d 369, 381 (6th Cir. 2005).  In the sentencing context, the government bears the burden of demonstrating "with certainty that the error at sentencing did not 'cause[ ] the defendant to receive a more severe sentence.'" *Emerick v. Wolfe*, No. 2:05cv1057, 2006 WL 3500005, at *2 (S.D. Ohio Dec. 5, 2006) (quoting *Oliver*, 397 F.3d at 379).  "[R]emand for an error at sentencing is required unless we are certain that any such error was harmless–*i.e.* any such

error 'did not affect the trial court's selection of the sentence imposed.'"  *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (quoting *Williams*, 503 U.S. 193).

Recently, the federal district courts in Ohio have taken two different positions regarding whether *Blakely* violations constitute harmless error in light of *Foster*.  *See*, *e.g.*, *Shafer v. Wilson*, 2007 WL 315760 (N.D. Ohio Jan. 30 2007) (finding *Blakely* violation harmless error in light of *Foster*) (Gwin, J.); *Perry v. Money*, No. 1:05cv2737, 2007 WL 2236634 (N.D. Ohio July 31 2007) (finding *Blakely* error was not harmless after *Foster*).  A basic understanding of the remedial aspects of the Ohio Supreme Court's *Foster* opinion is necessary in order to understand these two approaches.  *Foster*, 109 Ohio St. 3d at 25-28.

In *Foster*, the Ohio Supreme Court held that several provisions of the Ohio sentencing guidelines were unconstitutional in light of *Blakely* and *Booker*.  Rather than invalidating the guidelines entirely, however, the Ohio Supreme Court adopted the "*Booker* remedy" of severance.  *Foster*, 109 Ohio St. 3d at 28.  By severing the offending provisions, the guidelines were converted from mandatory to advisory.  Thus, the guidelines no longer violate *Blakely*. *Id*. at 27 ("Where sentencing is left to the unguided discretion of the judge, there is no judicial impingement upon the traditional role of the jury.").  Applying the severance remedy, the Ohio Supreme Court declared several provisions, including those under which Cvijetinovic was sentenced unconstitutionally, and severed them from the sentencing guidelines:

> The following sections, because they either create presumptive minimum or concurrent terms or require judicial fact-finding to overcome the presumption, have no meaning now that judicial findings are unconstitutional: R.C. 2929.14(B), 2929.19(B)(2), and 2929.41. These sections are severed and excised in their entirety, as is R.C. 2929.14(C), which requires judicial fact-finding for maximum prison terms, and 2929.14(E)(4), which requires judicial findings for consecutive terms. R.C. 2953.08(G), which refers to review of statutory findings for consecutive sentences in the appellate record, no longer applies. We also excise

40

R.C. 2929.14(D)(2)(b) and (D)(3)(b), which require findings for repeat violent offenders and major drug offenders.

. . . Excising the unconstitutional provisions does not detract from the overriding objectives of the General Assembly, including the goals of protecting the public and punishing the offender. See R.C. 2929.11(A). The excised portions remove only the presumptive and judicial findings that relate to "upward departures," that is, the findings necessary to increase the potential prison penalty. We add no language, and the vast majority of S.B. 2, which is capable of being read and of standing alone, is left in place.

We therefore hold that R.C. 2929.14(B) and (C) and 2929.19(B)(2) are capable of being severed. After the severance, judicial fact-finding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant. We further hold that R.C. 2929.14(E)(4) and 2929.41(A) are capable of being severed. After the severance, judicial fact-finding is not required before imposition of consecutive prison terms. Finally, we hold that R.C. 2929.14(D)(2)(b) and (3)(b) are capable of being severed. After the severance, judicial fact-finding is not required before imposition of additional penalties for repeat-violent-offender and major-drug-offender specifications. The appellate statute R.C. 2953.08(G), insofar as it refers to the severed sections, no longer applies.

Accordingly, we have concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences.

*Id*. at 29-30.

Judge James Gwin of the Northern District of Ohio first articulated the view that *Blakely* error was harmless after *Foster*. *See Shafer*, 2007 WL 315760 at *11. Judge Gwin reasoned that the error was harmless because, upon re-sentencing, the trial Judge would have full discretion to re-sentence the petitioner to exactly the same sentence. *Id.* In *Shafer*, the petitioner had been convicted of a crime for which the presumptive minimum sentence – *i.e.*, the required sentence absent certain findings, including judicial fact-finding – was three years, but the statutory range was between three and ten years. *Id.* at 10. The trial court sentenced

the petitioner to five years, apparently justifying the sentence above the presumptive minimum by finding that the petitioner showed no remorse and abused a position of trust.  *Id*.  Based on these facts, Judge Gwin found harmless error:

> After the Ohio Supreme Court's decision in *State v. Foster*, sentencing judges are free to impose any sentence within the applicable statutory range without the need to make any specific judicial findings.  *See Foster*, 845 N.E.2d at 496.  Stated otherwise, because Ohio remedied its unconstitutional sentencing regime by making its guidelines advisory, there is no reason to believe the Petitioner would receive a more favorable sentence if the Court grants his habeas request for relief. In light of the fact that the Supreme Court has held that *Blakely* violations are not "structural" errors that require automatic reversal, we therefore agree with Respondent that no basis exists for granting the Petitioner's request for relief despite the fact that his re-sentencing clearly did violate *Blakely*.

*Id*.

In *habeas* cases involving the same issue, the reasoning in *Shafer* was expressly rejected by several other Ohio district courts.  *See Villagarcia*, 2007 WL 1028528 at *4; *Noland*, 523 F. Supp. 2d at 663; *Perry*, 2007 WL 2236634 at *13; *Shahan v. Jeffries*, No. 2:06cv160, 2007 WL 1432042, at *3 (May 14 2007).  These courts reasoned that the fact that an error *could* be harmless does not satisfy the harmless error standard.  As stated by Judge Frost in *Villagarcia*:

> The flaw in [the reasoning in *Shafer*] is that it equates a possibility of no actual prejudice in terms of the eventual sentence received with an actuality of no prejudice resulting from a constitutional error. . . . [B]ecause more than one outcome is possible upon re-sentencing, basing harmlessness on assumed certainty is flawed.  It converts the concept of harmless error in this context into a doctrine of always harmless error.  Such conversion is especially dangerous when, as here, the possibility of a different sentence must logically preclude any habeas court from saying for a certainty that error is harmless.  *See United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) ("Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless").

*Villagarcia*, 2007 WL 1028528 at *4.

42

The Court agrees with the reasoning in *Villagarcia*.  A sentencing error is not harmless if the petitioner could receive a lesser sentence absent unconstitutional judicial fact-finding.  In fact, it appears that the disagreement among the district courts may dissolve – in *Crotts v. Bradshaw*, 1:06cv2519, 2007 WL 3283841, at *17 (N.D. Ohio Oct. 30 2007),  Judge Gwin expressly retreated from his opinion in *Shafer* and adopted the reasoning articulated in *Villagarcia*.

> The Court agrees with the criticism of *Shafer* and *Leach* that to hold this type of error harmless "converts the concept of harmless error ... into a doctrine of always harmless error. Such conversion is especially dangerous when, as here, the possibility of a different sentence stops this ... habeas court from saying for a certainty that the error is harmless." *Shahan v. Jeffries*, No. 2:06-cv-160, 2007 U.S. Dist. LEXIS 35149, 2007 WL 1432042, at *3 (S.D.Ohio May 14, 2007). While the state sentencing court may impose the same sentence, it also may choose to impose a different one, as such the Court does not find the error harmless.

*Crotts*, 2007 WL 3283841, at *17.

Applying this reasoning, like the petitioner in *Villagarcia*, Cvijetinovic was sentenced above the presumptive minimum based on judicial fact-finding, but within the statutory range. Therefore, he could receive a lesser sentence upon re-sentencing and the *Blakely* violation is not harmless error.[18]  *See also Oliver*, 397 F.3d at 381 (refusing to apply harmless error analysis to Sixth Amendment violations under *Blakely/Booker*); *United States v. Milan*, 397 F.3d 445, 453 (6th Cir. 2005).

---

[18] In the classic category of 'be careful what you ask for,' Cvijetinovic could conceivably receive a harsher sentence upon re-sentencing.

43

Accordingly, the Court **GRANTS** Cvijetinovic's petition with respect to his first ground for relief.[19]  Cvijetinovic's sentence is **VACATED,** and he must be released from incarceration unless the State of Ohio re-sentences him within ninety days.

### B.       Ground Two – Denial of Motion to Withdraw Guilty Plea and Hearing

After the Ohio Court of Appeals affirmed Cvijetinovic's conviction but remanded for re-sentencing, he filed a motion to withdraw his guilty plea.  At the re-sentencing hearing, the trial court denied his motion to withdraw his guilty plea without conducting a hearing on the motion.  In his second claim, Cvijetinovic alleges that he was denied due process when the trial court did not conduct a hearing prior to denying his motion to withdraw his guilty plea.

### 1.       The R&R's Recommendation: DISMISS

The Magistrate Judge found that this claim was barred by procedural default because the Ohio Court of Appeals upheld the guilty plea based on principles of Ohio law, and, thus, the law of the case deprived the trial court of jurisdiction to adjudicate the motion to withdraw the plea.  Doc. 16 at 13-16.  Although Cvijetinovic argued that the Ohio Court of Appeals misinterpreted its own decision in *State v. Douse*, 2003-Ohio-5238, 2003 WL 22251444 (Ohio Ct. App. 2003), a federal court must defer to the state court's interpretation of its own procedural laws, even if the court errs in applying its own rules regarding procedural default, unless that interpretation contravenes clearly established federal law.  *See Simpson v. Jones*, 238 F.3d 399, 406-07 (6th Cir. 2000).  Furthermore, Cvijetinovic's cause and prejudice argument for excusing procedural default based on ineffective assistance of counsel is itself

---

[19] Ground Four of Cvijetinovic's petition overlaps with Ground One in that Cvijetinovic challenges the imposition of a sentence above the presumptive minimum in both Grounds. Therefore, the analysis and conclusion applicable to Ground One is also applicable to this sub-claim of Ground Four.

procedurally defaulted because he did not raise it on appeal.  *See Edwards v. Carpenter*, 529 U.S. 466, 453 (2000); *Murray v. Carrier*, 477 U.S. 478, 498 (1986).  In addition, the Magistrate Judge noted that this claim is non-cognizable on *habeas* review because there is no federal right to an evidentiary hearing on a motion to withdraw a plea, and no absolute right to withdraw a guilty plea.  Doc. 16 at 16 n.4.

### 2.    Cvijetinovic's Objections

Cvijetinovic contends that, when the Ohio Court of Appeals remanded for re-sentencing, he was entitled to withdraw his guilty plea under the Ohio rule allowing withdrawal of a guilty plea prior to sentencing.  He argues that the Court of Appeals misapplied its own decision in *Douse* because it did *not* issue a limited remand affirming the validity of Cvijetinovic's plea, but remanded solely for re-sentencing purposes.

### 3.    Analysis

The Court agrees with the Magistrate Judge's conclusion and analysis.  First, this claim is non-cognizable on *habeas* review because it involves a matter of purely state law.  *See Simpson*, 238 F.3d at 406-07; *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).  Second, even if it were cognizable, the Magistrate Judge's analysis regarding procedural default is correct. Cvijetinovic's contention that the Court of Appeals did not issue a limited remand is not supported by the record.  In fact, the Ohio Court of Appeals addressed this very issue in its opinion affirming the trial court's denial of his motion to withdraw his guilty plea (Doc. 11-35) and concluded that the trial court had properly denied the motion for lack of jurisdiction based on the appellate court's decision affirming Cvijetinovic's conviction.  A fair reading of *Douse* and *State ex rel. Special Prosecutors v. Judges*, 55 Ohio St. 2d 94, 97 (Ohio 1978), the case on

which the Court of Appeals relied, supports the Court of Appeals' interpretation and does not implicate any clearly established federal constitutional principles.  Accordingly, Cvijetinovic is not entitled to relief with respect to his second ground and it is **DISMISSED**.

       **C.**       **Ground Three – Misrepresentations by the Trial Court and Counsel Regarding Judicial Release**

Cvijetinovic alleges that his trial counsel told him he would be eligible for judicial release, thus permitting him to leave prison prior to the expiration of his stated sentence.  He also alleges that Judge Sutula's statement to the effect that he "may" be eligible for judicial release after serving five years "confirmed" counsel's misrepresentation.  He contends that, but for these misrepresentations, he would not have entered a guilty plea.

       **1.**       **The R&R's Recommendation: DISMISS**

The R&R treats Cvijetinovic's claim that the trial court and his counsel misled him regarding potential eligibility for judicial release separately.  Doc. 16 at 16-21.

       **i.**       **Misrepresentations by Trial Counsel Regarding Judicial Release**

With respect to the claim that alleged misrepresentations by trial counsel regarding judicial release amount to ineffective assistance in entering the guilty plea, the Magistrate Judge concludes that Cvijetinovic did not exhaust this claim because he did not assert it before the Ohio Court of Appeals.  In addition, the Magistrate Judge concluded that procedural default applies because *res judicata* would now preclude Cvijetinovic from bringing the claim in state court.

### ii. Misrepresentations by the Trial Court Regarding Judicial Release

Cvijetinovic did raise the trial court's alleged misrepresentations regarding judicial release before the Ohio Court of Appeals.  Although the Magistrate Judge opines that this claim may not be exhausted due to Cvijetinovic failure to appeal the appellate court's decision on this issue to the Ohio Supreme Court, she analyzes the claim on the merits anyway.  Doc. 16 at 17.  On the merits, the Magistrate Judge found that the Court of Appeals decision finding that the plea was entered voluntarily, knowingly, and intelligently and was not contrary to, or an unreasonable application of, clearly established federal law.  Doc. 16 at 18-21.

### 2. Cvijetinovic's Objections

First, Cvijetinovic argues that filing a delayed appeal in order to exhaust his ineffective assistance of counsel claim would be an "exercise in futility." He contends that he asserted his ineffective assistance of counsel in his appeal of the denial of his motion to withdraw his guilty plea, which he did appeal to the Ohio Supreme Court.  In addition, Cvijetinovic argues that "Ohio courts have consistently ruled that a failure to give proper advice concerning post-release control voids any plea." Doc. 19-1 at 7 (citing several Ohio cases).  He contends that these cases establish that Cvijetinovic's plea was not "knowing, intelligent, and voluntary" under Ohio law. *Id*. at 11.

### 3. Analysis

In order to understand the Magistrate Judge's exhaustion argument, it is important to recall that the Ohio Court of Appeals initially affirmed Cvijetinovic's conviction and, consequently, his guilty plea, but remanded for re-sentencing.  Although Cvijetinovic later filed a motion for delayed reconsideration of this particular decision, the Court of Appeals

47

denied his motion and he never appealed the denial to the Supreme Court.  Therefore, in order to exhaust the claim that his trial counsel was ineffective, he must file a motion for delayed appeal.

Setting aside the issue of exhaustion, however, Cvijetinovic's assertion that he raised his ineffective assistance of counsel argument on direct appeal is incorrect.  Although he alleged that his counsel misinformed him, he couched his claim strictly in terms of the adequacy of a guilty plea and the "knowing, voluntary, and intelligent" standard.  Doc. 30 at 9-14.  Thus, the state procedural doctrine of waiver applies.  The first three elements of the *Maupin* test are satisfied by the waiver doctrine – it is an applicable state procedural rule that is regularly applied and an adequate an independent state ground.  *See Rust*, 17 F.3d at 161.  To excuse procedural default, Cvijetinovic must show cause and prejudice.  He cannot establish cause because nothing impeded him from raising the claim in his direct appeal.  Therefore, his ineffective assistance of counsel claim is procedurally defaulted.

With respect to Cvijetinovic's due process claim that the court misadvised him regarding judicial release, the Magistrate Judge properly concluded that it fails on the merits. The Magistrate Judge accurately distinguished the federal cases on which Cvijetinovic relied – *Hart v. Marion Correctional Inst.*, 927 F.2d 256 (6th Cir. 1991) and *United States v. Stubbs*, 279 F.3d 402, 412 (6th Cir. 2002) – and reasonably concluded that, based on the totality of the circumstances, Cvijetinovic entered his plea voluntarily, knowingly, and intelligently.  *See Brady v. United States*, 397 U.S. 742, 748 (1970).

To the extent it is an objection and not a new claim,[20] Cvijetinovic's argument citing additional Ohio cases for the proposition that misinforming the defendant regarding post-release control voids the plea does not undermine the conclusion that the state court did not violate clearly established *federal* law regarding the validity of guilty pleas.  The Magistrate Judge correctly cited and applied the clearly established federal law applicable to guilty pleas.  For *habeas* purposes the Court is required to apply the federal law as determined by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d).

Accordingly, Ground Three is **DISMISSED**.

**D.      Ground Four – Reliance on Matters Outside the Record; Sentencing to Consecutive Terms; and Sentencing to More than the Minimum**

**1.      The R&R's Recommendation: DISMISS**

Ground four presents three issues.  The Magistrate Judge addressed the claim regarding sentencing in excess of the statutory minimum in her analysis of Ground One.  The other two issues raise new variations on the first ground, however.  Cvijetinovic alleges that Judge Sutula relied on matters outside the record in imposing the sixteen year sentence.[21]  The Magistrate Judge concluded that Cvijetinovic procedurally defaulted this claim by failing to object at sentencing.  The Magistrate Judge found that, under the "contemporaneous objection" rule, the state court would no longer hear this argument because Cvijetinovic did not preserve it for

---

[20] In her Response to Cvijetinovic's Objections, the Respondent contends that his argument and case citations concerning failure to properly advise the defendant regarding post-release control improperly raises a new argument.  While it is true that the Court cannot consider an argument raised for the first time in post-petition briefs, *see Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005), this is immaterial because the argument is meritless.

[21] For example, Judge Sutula allowed Cvijetinovic's girlfriend, the victim of the intimidation charge, to address the court at the sentencing hearing and to accuse Cvijetinovic of giving her phone number to fellow inmates.  Although Cvijetinovic denied this, Judge Sutula stated that she held him responsible for every unwanted phone call his girlfriend received.

49

appeal.  Lastly, the Magistrate Judge concluded that Cvijetinovic's challenge to imposing consecutive (as opposed to concurrent) prison terms is non-cognizable on *habeas* review because it is purely an issue of state law.  Moreover, the claim fails on the merits because the trial court properly applied then-applicable state law regarding consecutive sentences and, therefore, did not violate due process.

### 2.    Cvijetinovic's Objections

Although Cvijetinovic's objections to ground one apply to the minimum sentence aspect of this ground, he only asserts one objection to the other two aspects of ground four. That is, he argues that the contemporaneous objection rule does not apply at the sentencing stage.  He cites *Foster*, 109 Ohio St. 3d 1, for this contention.

### 3.    Analysis

It is well-established in the Sixth Circuit that procedural default may be based on the contemporaneous objection rule.  *See Scott v. Mitchell*, 209 F.3d 854, 868 (6th Cir. 2000); *see also Jalowiec v. Bradshaw*, No. 1:03cv645, 2008 WL 312 655, at *23 (N.D. Ohio Jan. 31 2008); *Steimle v. Jackson*, No. 1:04cv813, 2005 WL 3357305, at *3 (N.D. Ohio Dec. 9 2005). Moreover, in *Steimle*, the Northern District of Ohio applied the contemporaneous objection rule in the context of a sentencing proceeding.  It is true that the Ohio Supreme Court in *Foster*, 109 Ohio St. 3d at 11, *rejects* the notion that failure to object to an *Apprendi/Blakely* violation at sentencing prior to issuance of *Blakely* constituted waiver.[22]  The Magistrate Judge only applied the contemporaneous objection rule to Cvijetinovic's claim that Judge Sutula

---

[22] Cvijetinovic invokes *Foster* here within the procedural default analysis in order to argue that Ohio courts do not routinely enforce the contemporaneous objection rule. Cvijetinovic does not offer further support for this argument, however, and, as noted above, recent authority within the Sixth Circuit is not supportive.  *See Jalowiec*, 2008 WL 312655 at *23.

50

relied on facts outside the record, however.  Unlike the statutory provisions pertinent to the *Apprendi/Blakely* claim, Ohio's sentencing guidelines did *not* permit the Judge to freely rely on facts outside the record that claim, accordingly, is asserted under state law, not *Blakely*. Therefore, Cvijetinovic's objection is not well-taken and the Magistrate Judge correctly dismissed the claim concerning reliance on matters outside the record.

Likewise, although Cvijetinovic did not object to the Magistrate's conclusion that the challenge to consecutive sentences is non-cognizable, it is worth noting that this claim is distinguishable from the core *Apprendi/Blakely* claim that Cvijetinovic's sentence was based on judicial fact-finding.  As another court in the Northern District of Ohio very recently noted, the "United States Supreme Court has not ruled that the imposition of consecutive sentences, based on judicial fact-finding or not, violates the Sixth Amendment; nor has it extended *Apprendi, Blakely*, or *Booker* to consecutive sentences."  *Cobbin v. Hudson*, No. 1:05cv552484, 2008 WL 552484 (N.D. Ohio Feb. 26 2008) (Polster, J.).  Cvijetinovic's challenge to the consecutive nature of his sentences is not cognizable on *habeas* review and is dismissed accordingly.

## IV.  **CONCLUSION**

The Court **ADOPTS** Magistrate Judge Vecchiarelli's Report and Recommendation with respect to Grounds Two, Three, and the portions of Ground Four that are not subsumed by Ground One and **DISMISSES** these Grounds accordingly.  The Court **OVERRULES** Magistrate Vecchiarelli's Report and Recommendation with respect to Ground One, and the remaining portions of Ground Four, and **CONDITIONALLY GRANTS** Cvijetinovic's petition with respect to these Grounds.  Cvijetinovic's sentence is hereby **VACATED**, and he

must be released from incarceration unless the State of Ohio re-sentences him within ninety days.

**IT IS SO ORDERED.**

s/ Kathleen M. O'Malley_____
**KATHLEEN MCDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**DATE:  March 31, 2008**